UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CRIMINAL MINUTES - GENERAL

Lexington       Case No. 16-CR-62-DCR-REW-1        At Lexington       Date September 21, 2016

U.S.A. vs. Deric Lostutter        x  present      custody   x  bond       OR

PRESENT:    HON. ROBERT E. WIER, UNITED STATES MAGISTRATE JUDGE

       Susan Adkins            Audio File Number        Neeraj K. Gupta
       Deputy Clerk            Court Reporter           Assistant U.S. Attorney

    Counsel for Defendant: Frederic B. Jennings  x present     appointed   x  retained

I, Susan L. Adkins, Deputy Clerk, CERTIFY the official record of this proceeding is an audio file KYED-LEX__5-16-cr-62-DCR-REW-1_20160921_131135.

PROCEEDINGS:    **INITIAL APPEARANCE / BOND REVOCATION HEARING**

The parties appeared as noted and announced they were ready to proceed with bond revocation proceedings under 18 U.S.C. § 3148. The Court advised Defendant of his constitutional right to silence. The parties confirmed receipt and review of the September 15, 2016, violation report and connected documentation. The United States confirmed that it intended to prove the violations the report alleged (although it would not seek revocation). The Court reviewed the process and standards used to resolve the allegations. The Court heard argument and proffer by counsel, as well as the sworn testimony of USPO Mark George. The Court also admitted two defense exhibits and one Court exhibit.[1]

The Court **ORDERS** as follows, for the reasons more fully stated on the record:

1. The Court **FINDS,** by clear and convincing evidence, that Defendant violated the terms and conditions of his bond as reported. *See* 18 U.S.C. § 3148(b)(1)(B). Particularly, the Court clearly finds that Lostutter violated DE #18 when he tweeted links to his website, which contained details and specifics about the case. The Court's Order clearly permitted Defendant to *only* post information about how to contribute to his defense fund—"*not* anything regarding the details or specifics of the case." DE #18. The Court did **not** say that Lostutter could pair defense fund crowdsourcing with (even a historical) chronology of case events, allegations, etc.; in fact, it forbade such conduct. Thus, by linking to his website post-arraignment, Lostutter communicated and publicized, post-release, details and specifics of the case and exceeded the Court's *very narrow* authorization to post a specific type of crowdsourcing information. Because Lostutter did not provide new information, though, the Court views the violation as comparatively minor.

   The second violation is more concerning to the Court. The Court clearly finds that Lostutter violated DE #18 when he threatened Jenna King with a civil lawsuit and potential criminal process. The Court clearly barred Lostutter from using the Internet "to threaten or harass any person[.]" DE #18, at 1 n.1. This extended to use of an Internet-capable device. The hearing testimony and report (and Defendant does not contest screen shot authenticity) indicate that Lostutter used Facebook to find information concerning Ms. King, and then threatened the lawsuit and possible criminal charges via text message. Lostutter certainly threatened Ms. King, and used the Internet (and/or a device that accesses the Internet) in doing so.[2]

---

[1] The Court admitted the violation report and attachments as an exhibit without redaction, for the reasons stated during the bench conference.

[2] The Court intended the prohibition against threatening to include any electronic communication, to include text messaging. Even if this reach is technically debatable, the conditions independently, and more broadly, barred Lostutter from using "devices to access the Internet" except for purposes of his business and to contact / communicate with his family and defense counsel. DE #18. Threatening to initiate a personal civil lawsuit or

      2.      The Court then turned to the effect of these violations. The Court has evaluated the § 3142(g) factors, the relevant case history, the violation report and related documents, DE ##22 and 25, the original PSR, the hearing, and the full record. The Government did not seek revocation. The statute, however, requires revocation unless conditions "will assure" that Defendant not pose a danger.[3] 18 U.S.C. § 3148(b)(2)(A). This is a higher standard than the initial inquiry. § 3142(e) ("will reasonably assure"). The Court must also revoke if it finds that Defendant is "unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2)(B). For the following reasons and those stated on the record, the Court does not revoke Defendant's bond at this time but instead **MODIFIES** the conditions of his release. The Court finds that a more categorical and stricter set of conditions will assure, and is necessary to assure, that Defendant not pose a danger. *See* § 3148(b) ("If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.") Part of the justification for tighter conditions lies in recognition that the underlying charged conduct allegedly involved computer and Internet use for purposes of threatening others—the Court presumes Defendant innocent, but the category of conduct indicted affects the type of danger the Court must take into account in crafting conditions. The Court thus **IMPOSES** the following additional or amended conditions:

      (a)    Defendant shall not use or access (directly or indirectly) the Internet or any electronic communication device or mechanism (to include a cell phone, text messaging, a computer, and any other electronic communication avenue) except to contact counsel of record, the USPO, any immediate family or household member, and regarding medical care. He may use a computer to review stored electronic discovery or case information supplied to him by counsel. The Court intends this absolute prohibition (with only these narrow carve-outs) to be broadly construed and cover Lostutter's use of *any* electronic communication device or mechanism.

---

criminal charges against an individual is not fairly part of Lostutter's business, which he represented to involve third-party client work. He had no generalized right to "investigate" via the Internet during the pretrial period.

[3] The Court has no current flight concern and, thus, would not revoke on risk of flight alone. Danger, however, is a different matter. Danger has an expansive meaning under the Bail Reform Act, and fairly encompasses danger that a defendant will seek to subvert justice, through whatever means, and includes potential threats to the integrity of the judicial process and economic harm. *See United States v. LaFontaine*, 210 F.3d 125, 134-35 (2d Cir. 2000) (holding that threat of obstruction, with or without violence, can constitute "the type of danger to the community that would support detention" and noting that "obstruction of justice has been a traditional ground for pretrial detention"); *see also United States v. Patriarca*, 776 F. Supp. 593, 597 (D. Mass. 1991) ("Danger in this context . . . means more than a risk of physical violence."); *United States v. Ippolito*, 930 F. Supp. 581, 583 (M.D. Fla. 1996) (referencing courts' "inherent authority" to "detain[] defendants to insure the integrity of the trial process" (citing, *inter alia*, *United States v. Graewe*, 689 F.2d 54 (6th Cir. 1982) (countenancing bail revocation "if necessary to ensure orderly trial processes" and "when the court's own processes are jeopardized"), and *United States v. Wind*, 527 F.2d 672 (6th Cir. 1975))); *United States v. Agnello*, 101 F. Supp. 2d 108, 114 (E.D.N.Y. 2000) (considering "the defendant's contempt for court requirements and the danger he poses to witnesses and to the integrity of the criminal justice process"); *United States v. Gotti*, No. S502CR743(RCC), 2004 WL 405950, at *3-*4 (S.D.N.Y. Mar. 3, 2004) (considering threats to the "integrity of the judicial process" and "integrity of the trial process" in detention analysis); *cf. United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) ("There can be no question that an economic danger . . . falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act."). Lostutter flouting a Court Order or expressing disregard for the Court through his actions could potentially be a basis for danger-based detention. *See, e.g.*, *United States v. Bartok*, 472 F. App'x 25, 29 (2d Cir. 2012) (stating as to § 3148(b)'s danger element, "conduct by a defendant that poses a serious threat to the court's processes has long been recognized as a ground for pretrial detention" (internal quotation marks and alteration removed)); *cf. Graewe*, 689 F.2d at 56-57. Again, as noted, the Court endeavored to bar any device/Internet use in a threatening way, but this more limited restriction *quickly* proved inadequate. Defense counsel also suggested Jenna King might be a case witness, which further heightens the Court's concern and the need for added restrictions.

    (b) Defendant shall have no contact of any type, directly or indirectly, with Jenna King. He also is to have absolutely no direct or indirect contact with any victim, witness identified by the Government, or any other potential witness (as to solely defense witnesses, Defendant may have contact, though only in the presence of Lostutter's counsel).

    (c) Because the conditions make Defendant continuing his self-employment impossible pending trial, Defendant shall actively seek legitimate, third-party employment during the pre-trial period. The USPO shall appropriately assist in Defendant's job-searching efforts. Frankly, Lostutter's construction of the scope of his business as including the policing of his personal interests shows that allowing further Internet-based operations would not, in any event, be workable here. Given leeway by the Court, Defendant violated in two distinct ways—as such, the Court now must eliminate further avenues for like violations by restricting Lostutter's conduct as indicated.

3. Defendant may seek review per § 3145.[4]

Copies: COR, USP, USM
Initials of Deputy Clerk <u>sla</u>
TIC: /.05 IA
    1.17 Revocation Hrg

Signed By:
<u>Robert E. Wier</u>  REW
United States Magistrate Judge

---

[4] The Court strongly admonished Lostutter concerning the likely outcome if the Government proves any future bond violation(s), given the two established violations here. Lostutter understood the relationship between staying compliant and his continued liberty. The Court highly discourages Lostutter from pressing the boundaries of what the release conditions may permit; instead, he should comply with not only the letter, but also the spirit, of the imposed conditions to avoid future potential problems. Bond requires, to some degree, a defendant's good faith effort to stay compliant. The Court is not yet at the point of making a § 3148(b)(2)(B) finding, but likely will be if Lostutter returns to Court again in this context. He may seek guidance or clarification by motion, as needed.