AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Kentucky

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>436 Miller Hunt Road, Winchester, KY 40391 (See<br>Attachment A, B for full description) | )<br>)<br>)<br>)<br>)<br>) |

Case No.   5:13-MJ-5116-REW

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Eastern_____ District of _____Kentucky_____ *(identify the person or describe property to be searched and give its location)*:   The premises at 436 Miller Hunt Road, Winchester, KY 40391. (See Attachment A, B.)

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:   See Attachment B, which is incorporated and made a part hereof

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____18_____ U.S.C. § _1030, 1028A_ , and the application is based on these facts:   See the attached Affidavit of TFO Dan Jackman, which is incorporated by reference and made a part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Dan Jackman
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/15/2013

*Judge's signature*

City and state: Lexington, Kentucky

RE Wier, U.S. Mag Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE RESIDENCE LOCATED AT 436 MILLER HUNT ROAD, WINCHESTER, KY 40391 | Case No. 5:13-MJ-5116-REW |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Dan Jackman, a Task Force Officer with the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a detective with the Louisville Metro Police Department's Crimes Against Children Unit and routinely investigates child exploitation cases where computers or other means of electronic communications are used.  I have successfully completed over 40 individual Cyber training sessions, and currently in Stage 3 of the FBI's Cyber Training Program.  I hold a Bachelor of Arts degree in Justice Administration from Northern Kentucky University.  I have been certified by the Department of Criminal Justice Training at Eastern Kentucky University to instruct in the areas of Criminal Investigations, Cyber Investigations, and Crimes Against Children Investigations.  I have also been certified to teach Identifying and Seizing Electronic Evidence from the National White Collar Crime Center.  As a police detective deputized by the United States Marshals Service, I am authorized to investigate violations of laws of the United States.  I am authorized to execute warrants issued under Rule 41 of the Federal Rules of Criminal Procedure, and to search for and seize evidence of a crime.

2.      Affiant has investigated more than 450 cases involving the Internet, Cyber

Intrusion, and Child Exploitation. I have gained vast knowledge regarding how to conduct such investigations through training in seminars, conferences, classes, and personal experience working these types of investigations in an ongoing basis.

3.          The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## LEGAL

4.          This affidavit is being filed in support of an application for a warrant to search 436 Miller Hunt Road, Winchester, KY 40391 (hereinafter the "PREMISES"), and seize the items described in Attachment "B". There is probable cause to believe that the items described in Attachment "B" will be found in the location described herein and that they constitute fruits, instrumentalities and evidence of violations of the following sections:

Title 18 U.S.C. § 1030 Fraud and related activity in connection with computers –

(a) Whoever, …

> (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains –
>
> (C) information from any protected computer

has violated the statute. A protected computer is one "used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(a)(2)(C). The offense is a felony under 18 U.S.C. § 1030(c)(2)(B)(ii) if –

> (ii)     The offense was committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

2

<u>Title 18 U.S.C. § 1028A.  Aggravated Identity Theft</u>

    (a) Offenses---

        (1) In general.--Whoever , during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person…

has violated this statute.  Title 18 U.S.C. § 1030 is included in subsection (c) of the above

statute.

<u>Title 18 U.S.C. § 1028 Fraud and related activity in connection with access – devices</u>

    (a)    Whoever, in a circumstance described in subsection (c) of this section---

        (7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law;

has violated this statute.  The applicable circumstance is in subsection (c)(3)(A) requiring

the "production, transfer, possession, or use prohibited by this section is in or affects

interstate or foreign commerce, including the transfer of a document by electronic means.

Moreover, a conspiracy to violate 18 U.S.C. § 1028 is punishable to the same extent as a

primary violation of the statute.  18 U.S.C. § 1028(f).  An individual's name is a "means

of identification" for purposes of 18 U.S.C. §§ 1028(a)(7) and 1028A.

<u>Title 18 U.S.C. § 371 Conspiracy</u>

    If two or more persons conspire …to commit any offense against the United States…and one or more of such persons do any act to effect the object of the conspiracy..

have violated this statute.

**TECHNICAL TERMS**

5.      Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c.   Storage medium: A storage medium is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

6.      As described above and in Attachment B, this application seeks permission to search for records that might be found on the PREMISES, in whatever form they are found.

4

One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

7. *Probable cause.* I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

8. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the

crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other

6

information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer to obtain unauthorized access to a victim computer over the Internet, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

9.   *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who

7

has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

10.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## INVESTIGATION

11.     On or around August 2012, Steubenville Police began investigating the rape of a 16-year old female. The investigation attracted national attention in part because of social media comments and video by teens involved in or aware of the activities involving the victim

and in part because the suspects were stars on the highly regarded Steubenville High School football team.  The investigation attracted the interest of the hacking group KnightSec.   Soon, individuals believed to be members of KnightSec used Twitter to discuss their discontent with the Steubenville rape investigation.  They also bragged about hacking the email and website accounts belonging to the webmaster of a local booster of Steubenville sports teams, hereinafter referred to as John Doe.

12.        On 12/23/2012, John Doe received an anonymous call stating that his fan website "rollredroll.com" had been hacked.  The website had been defaced and contained a message from the hacking group KnightSec announcing a planned "Occupy Steubenville" event and making allegations regarding John Doe's involvement in the possession and production of child pornography involving members of the high school football team and involving a named rape victim in a prior incident in a different geographical area of Ohio.  The defacement also included a link to a Zip file containing the contents of Doe's email account bigredmanowar@comcast.net.  Below and continuing on the next page is the defacement posted to the rollredroll.com website[1]:

---

[1] Note that the defacement page included the victims' real names: both the rape victim and the computer intrusion victim.  They have been hidden in this copy, but appeared in the original. Note also that the person in the picture is wearing a "Guy Fawkes" mask.  The Guy Fawkes mask is a stylized depiction of Guy Fawkes, the best-known member of the Gunpowder Plot, an attempt to blow up the House of Lords in London in 1605 according to Wikipedia.  The mask has become the trademark symbol for the online protest group Anonymous.



OCCUPY EVENTS WILL BE TAKING PLACE DEC 29TH AND JAN 5TH @ NOON.  STEUBENVILLE CITY HALL. MASKS ARE LEGAL TO WEAR, IF ASKED TO REMOVE MASK, TURN IT AROUND ON HEAD AND TAKE NOTE OF BADGE NUMBERS, WE WILL REPORT THEM TO ACLU.



In an effort to prove this, we gained access to the schools website via CPANEL login http://tinypic.com/r/o1owok7b, and the webmaster REDACTED http://www.facebook.com/BIGREDMANOWAR  personal email http://tinypic.com/r/2gwbclj/6 which we promptly found multiple nude photographs in.

We in turn locked him out of his own email, and backed up the contents to the web to preserve evidence. http://www.filehosting.org/file/details/405512/Emails.zip

We strongly urge local law enforcement to look into this email as possible child porn could be present.

We found one photo in this email that strongly resembles REDACTED http://imgur.com/D2UuS , https://www.facebook.com/Freedom4Savannah/photos_stream

who was a victim of rape in louisville ohio with the same circumstances as Steubenville.

These photos and more can be found in the download link. We assure you that all photos are legitimate and can provide password access to email accounts on request by officials however they will not be released to the public for fear of data corruption.



13.       On 1/9/2013, after confirming his identity, FBI agents interviewed Doe at his home in Steubenville, OH regarding the defacement of rollredroll.com. He described the website as being a fan page for the Steubenville High School football team. After receiving the anonymous phone call, Doe checked the site and confirmed it had been defaced. He tried to log into the admin console and found that his username and password did not work. Fearing that his other accounts might be affected, Doe tried to access his email and Facebook accounts. He discovered that he was also locked out of those accounts. When Doe obtained access back into the rollredroll.com account, he noticed that the perpetrators had changed various settings. The DNS[2] settings for rollredroll.com were changed to:

> Knight Sec Inc., Bat Cat, 1971 Brooks Court, Los Angeles, CA 90009
> 818-788-8888
> justbatcat@gmail.com

---

[2] DNS is the Domain Name Server and contains registrar information for the individual who operates the domain.

Doe informed FBI agents that rollredroll.com was hosted at Hostgator.com and that Hostgator would be able to provide the IP access logs and content of the site.

14.         On 1/10/13, FBI agents received consent from John Doe to obtain information from his account with Hostgator, including IP access logs and content for the rollredroll.com website.  Hostgator is located in Texas, and maintains servers that store information that can be accessed over the internet by users in any other state, including Kentucky and Virginia.  These servers are used in and affect interstate commerce and, thus, are "protected computers" within the ambit of 18 U.S.C. § 1030(e)(2)(B).  According to the logs, on 12/23/2012, the day the website was defaced, the IP addresses 70.174.58.83 and 184.43.20.206 gained access to the website's cPanel[3].  As detailed in the paragraphs below, these IP addresses were associated with users located in Kentucky and Virginia, respectively, on 12/23/2012.  The website's cPanel, therefore, was necessarily accessed through channels of interstate commerce.  Those two IP addresses were the only ones that successfully logged in on 12/23/2012.

15.         A grand jury subpoena was served on Cox Communications for the subscriber of IP address 70.174.58.83.  The results revealed that on 12/23/2012, Noah McHugh of 603 14th St. Apt B-dup (Duplex), Virginia Beach, VA 23451 was assigned that IP.

16.         A grand jury subpoena was served on Bell South/AT&T for the subscriber of IP address 184.43.20.206.  The results revealed that on 12/23/2012, Deric Lostutter of 436 Miller Hunt Road, Winchester, KY 40391 (the PREMISES) was assigned that IP.

17.         In response to a grand jury subpoena, Google provided information from which it was determined that the email account justbatcat@gmail.com, listed in the cPanel after

---

[3] cPanel is a web hosting control panel that provides a graphical interface and automation tools designed to simplify the process of hosting a web site.

the rollredroll.com website was hacked, had a secondary email account of

noahmchugh@mac.com. The subpoenaed information also included the IP logs associated with

the email address justbatcat@gmail.com. The IP logs revealed that the email account was

accessed consistently from IP address 70.174.58.83, which, as stated above, was associated with

Noah McHugh of Virginia Beach, VA on the day of the intrusion and defacement.

18.     In order to obtain additional evidence regarding the rollredroll.com account

takeover and defacement, FBI agents served a search warrant on Google for the contents of the

email account justbatcat@gmail.com. Contained in the email account was the complete text of

the rollredroll defacement page. It had been sent from kentuckyanon@gmail.com to

justbatcat@gmail.com on 12/23/12. The introductory paragraph of that email included the

following first sentence, which is in the narration for the video on the defacement page:

"Greetings citizens of the world, we are #Anonymous, we are #KnightSec."

19.     In the video on the defacement page, the individual in the mask talks about the

August rape incident and claims that it was covered up by the city of Steubenville. The person in

the mask reads off all the names of the players whom KnightSec believed to be involved in the

rape. The voice also talks about how the group will release names, Social Security Numbers,

and phone numbers of everyone involved unless they issue a public apology to the victim and her

family. The person in the mask names additional people it believes were involved in the rape.

The voice also states that the founder of the school's website "Manowar [John Doe]" released a

statement saying "how can the victim be 'scarred for life' if she can't remember anything." The

video itself is 4 minutes long and includes video of the rape victim being carried by two people

and photos of one of the charged football players.

13

20.      Also contained in the justbatcat@gmail.com account were auto generated

messages from Hostgator.com showing successful access to the rollredroll.com cPanel.  There

were also numerous Twitter direct messages between @KYanonymous and @JustBatCat.

Below are examples of some of the direct messages between the two Twitter accounts and the

dates they were sent:

> *"really need that CPanel deleted it logged IP traffic" – 12/23/2012*
> *"78011dckx new cpanel pass" – 12/23/2012*
> *"username is manowar" – 12/23/2012*
> *"when you get home can you help me delete ip login log? im in directory i dont se it" –*
> *12/23/2012*
> *"Just giving u credit for the deface do people follow u" 12/24/2012*
> *"Ah I'm mobile a rutube oprollredroll search should turn it up" – 12/25/2012*
> *"Maybe type oprollredroll mirror" – 12/25/2012*
> *"dude you need to take down the tinypic showing the cpanel login and replace it with*
> *edited one asap! it shows IP" - 12/25/2012*

The direct chat messages indicate that both parties were aware that their computer activities were

being logged and that they knew the importance of deleting the IP logs from cPanel in order to

avoid detection.

21.      A grand jury subpoena was sent to Twitter for IP access logs for the

@justbatcat account.  The results revealed that IP address 70.174.58.83, previously linked to

Noah McHugh, was used to access the @Justbatcat Twitter account.

22.      A grand jury subpoena was also sent to Twitter for IP access logs for the

@KYAnonymous account.  The results revealed that IP address 184.43.20.206, previously

linked to Deric Lostutter, was used to access the @KYAnonymous Twitter account.  Twitter also

reported that the @KYAnonymous account had been accessed by the following IP addresses at

specific times:

| IP Address | Date Time |
| --- | --- |
| 184.43.21.58 | 01/05/13 at 23:43:32 |

| 184.43.48.69 | 12/29/12 at 18:11:32 |
| 184.43.20.206 | 12/23/12 from 23:00 – 12/24/212 05:11:48 |
| 184.43.55.95 | 12/23/12 at 17:25:10 |
| 184.43.20.166 | 12/23/12 at 16:58:39 |
| 184.43.38.211 | 12/18/2012 at 23:58:39 |

In response to a grand jury subpoena, AT&T confirmed that each of the IP addresses listed above was leased, at the times listed above, to Deric Lostutter of 436 Miller Hunt Road, Winchester, KY 40391.

23.     KnightSec claimed, in the defacement message, that the url http://tinypic.com/r/otowok/6 contained proof that the group successfully hacked rollredroll.com. In order to confirm the link, FBI agents visited the page and discovered the following screenshot posted, with the IP address hidden by a red-line:



24.     A grand jury subpoena was sent to Photobucket for subscriber information associated with the posted URL.  The results showed that the photo was posted by IP address 184.43.20.206, previously identified as an IP assigned to Deric Lostutter.   Contained in the Photobucket results was a photo of the same screenshot, with the URL unmasked, as shown below:

15



25.     FBI agents also tested the alleged password protected "link" that contained John Doe's email.  When agents clicked on the link they discovered that it was not password protected and contained over one hundred of John Doe's personal email messages and private photos unconnected to the rape allegations.

26.     FBI surveillance and on-line research have shown that a single family residence is located at the PREMISES.  The residence is a two-story dwelling with yellow siding and a green roof.  The front door is white with a paneled window.  There are five windows along the front of the house facing the street.  A gravel driveway runs along the left side of the house to the rear of the property.  A large oval sign with the house numbers and "Stillwater" is located in the front yard near the street.  The property has two additional structures located in the rear.  A 42' x 18' and 42' x 55', neither which are attached to the dwelling.  The  42' x 55' building is approximately ¼ mile  from Millers Hunt Road.

27.     The FBI conducted surveillance on the PREMISES on multiple days.  The FBI observed Derec Lostutter outside of the residence on April 9, 2013.  Lostutter's identity was confirmed by examining the pictures from his driver's license and current Facebook profile and comparing those pictures to the individual who appeared outside of the residence on April 9, 2013.  Derec Lostutter's vehicle was seen at the location each day of surveillance.  By checking this vehicle's license plate number in a government database, the FBI confirmed that the vehicle was registered to Lostutter.  Additional vehicles were observed by the FBI during their surveillance.   Investigation revealed these vehicles are registered to the following persons:  Hannah Miller, Tammy Goodwin, and Chase Lostutter.  During the FBI's surveillance, the only persons determined to be currently living at the PREMISES were Hannah Miller and Derec Lostutter.

28.     Affiant conducted open source searches on the above listed persons and the residence.  The PREMISES are owned by Paul and Joanna Miller.  Paul Miller passed away in 2011.  Affiant located the opened (non-private) Facebook profiles for Derec Lostutter, Hannah Miller, and Chase Lostutter.   According to information found on their Facebook profiles, Hannah Miller and Mr. Lostutter are currently in a relationship.  Information discovered on Joanna Miller, Chase Lostutter, and Tammy Goodwin indicates they live at difference locations in Winchester, Kentucky.

## CONCLUSION

Based upon the evidence gathered to date, there is probable cause to believe that at the PREMISES, there exists evidence, fruits, and instrumentalities of violations of Title 18, U.S.C. §§ 1030(a)(2)(C) and (c)(2)(B)(ii), 1028A, 1028(a)(7) and (f) and 371.  By this affidavit and

17

application, I request that the Court issue a search warrant allowing agents to search for the items described in "Attachment B."   The information sought in the accompanying Application is relevant to an on-going investigation and premature disclosure of this Application and related documents may adversely impact the investigation.   Therefore, it is requested that this Application and the related documents be filed under seal.

Respectfully submitted,

TFO Dan Jackman
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this _15__ day of April 2013.

_____
UNITED STATES MAGISTRATE JUDGE

18

## ATTACHMENT A
## DESCRIPTION OF PROPERTY TO BE SEARCHED

The residence and outbuildings on the premises, to wit:_436 Miller Hunt Road, Winchester, KY 40391.  Any outbuilding must be on the same legal parcel bearing the address stated.









**ATTACHMENT B**
**Property to be seized**

The Court by this warrant allows any proper law enforcement officer to search the Premises identified on Attachment A and seize any of the following evidence. The evidence may be in any form, and the Court permits off-site review of any electronic storage media as provided in Rule 41(e)(2)(B). The warrant's temporal scope, as to records and information, extends to responsive evidence dated, arising, or coming into existence during the period between August 2012 and the present. In this attachment, "the subject matter addressed by this Warrant" means the hacking activity identified in para 1.a.-1.c. herein, as described fully in the relevant affidavit.

1. All records relating to violations of Title 18 U.S.C. § 1030(a)(2)(C) (Computer Crime); Title 18 U.S.C. § 1028A(Aggravated Identity Theft); 18 U.S.C. § 1028(a)(7) and (f) (Identity Theft, Attempt and Conspiracy); and Title 18 U.S.C. § 371 (Conspiracy), those violations involving records located at 436 Miller Hunt Road, Winchester, KY 43091 ('the PREMISES") and connected to user name Deric Lostutter beginning on or about August, 2012, including:

   a. Records and information relating to a conspiracy to gain unauthorized access to rollredroll.com, bigredmanowar@comcast.net and any other websites, email, Facebook or other social media accounts of "John Doe" the administrator of rollredroll.com;

   b. Records and information relating to the unauthorized access of rollredroll.com, bigredmanowar@comcast.net and any other websites, email, Facebook or other social media accounts of "John Doe" the administrator of rollredroll.com;

   c. Records and information relating to any unauthorized access to any known or unknown victims whose information was obtained through any of John Doe's compromised accounts;

   d. Records and information relating to the e-mail account bigredmanowar@comcast.net any and all accounts used to communicate with the online "hacker" groups KnightSec and/or Anonymous or any accounts used to facilitate illegal computer activity regarding the subject matter addressed by this Warrant, to wit the hacking event regarding para. 1.a.-1.c.

   e. Records and information relating to the identity or location of the perpetrators of the criminal violations above or to the identity or location of additional co-conspirators or witnesses;

   f. Records and information, concerning the subject matter addressed by this Warrant, relating to all communications with the Internet Protocol addresses assigned to the PREMISES including 184.43.20.206, 184.43.21.58, 184.43.48.69, 184.43.55.95, 184.43.20.166, and 184.43.38.211 and to IP address 70.174.58.83, 184.43.21.58;

   g. Records and information relating to malicious software;

   h. Guy Fawkes Masks.

   i. Records and information relating to communications with or instructions from members of KnightSec, Anonymous, or any other group engaged in computer intrusions as to the subject matter addressed by this Warrant;

j.  Cellular telephones and/or smart phones, and information and records thereon including text messages, contacts, emails, URLs, applications and geolocation information relating to communications or meetings between conspirators, or connected with social engineering to obtain information to facilitate the violations that are the subject matter addressed by this Warrant, and billing records for such devices;

k.  Records relating to the ownership, occupancy or use of the PREMISES;

2.  As specified in this paragraph, computers or storage medium used as a means to commit the violations of Title 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(b)(ii) (Computer Crimes); Title 18 U.S.C. § 1028A (Aggravated Identity Theft); 18 U.S.C. § 1028(a)(7) and (f) (Identity Theft, Attempt and Conspiracy); and Title 18 U.S.C. § 371 (Conspiracy) described above.  That is, law enforcement may seize any computers or electronic media that were or for which there is a reasonable basis to believe have been used as a means to commit or participate in the offenses listed in this paragraph, which is the subject matter addressed by this Warrant.  Specifically, any electronic device or storage media within the possession, custody, control, or ownership of Deric Lostutter (or the person reasonably believed to be that identity) at warrant execution may be seized and searched hereunder.

3.  For any computer storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

e.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

f.  evidence of the times the COMPUTER was used;

g.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

i.  records of or information about Internet Protocol addresses used by the COMPUTER relevant to the subject matter addressed by the Warrant;

j.  records of or information about the COMPUTER's Internet activity, as relevant to the subject matter addressed by the Warrant, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web

pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k. contextual information necessary to understand the evidence described in this attachment.

4. Routers, modems, and network equipment used to connect computers to the Internet.

5. Definitions:

a. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

b. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

c. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.